UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

MARIANNE STIKAS, *on behalf of herself*
*and all others similarly situated,*

                 *Plaintiffs,*

     *-against-*

J.P. MORGAN CHASE BANK, NATIONAL
ASSOCIATION, and JOHN DOES 1-20,

                 *Defendants.*

---------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: __3 - 19- 15__

14 Civ. 1277 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Marianne Stikas filed a Class Action Complaint against Defendants J.P. Morgan Chase Bank ("J.P. Morgan") and John Does 1-20, alleging breach of contract, unjust enrichment, and abuse of process, arising out of J.P. Morgan's alleged unlawful splitting of attorneys' fees with non-lawyers in a mortgage foreclosure proceeding. Plaintiff also seeks an accounting.

Defendant moves to dismiss all claims, pursuant to Fed. R. of Civ. P. 12(b)(6). For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Plaintiff's Mortgage and Default

On January 21, 2004, Plaintiff obtained a mortgage loan from Washington Mutual Bank to purchase real property, located in Kent, Connecticut. Compl. ¶¶ 26-27. In connection with the mortgage loan, Plaintiff signed a promissory note for the principal amount of $277,500, payable to Washington Mutual (the "Note"). *Id.* ¶ 27; Bernard Decl., Ex. A.

The Note provided that, if Plaintiff defaulted on the loan, Washington Mutual could

accelerate payment of the outstanding principal balance. The Note further stated that if such an acceleration occurred, Washington Mutual would have "the right to be paid back by [Plaintiff] for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law." Bernard Decl., Ex. A, at § 7(E). The Note explained that "expenses include, for example, reasonable attorneys' fees." *Id.*

The Note was secured by an open-end mortgage deed on the Connecticut property (the "Mortgage"). Compl. ¶ 27; Bernard Decl., Ex. B. The Mortgage likewise provided that, in the event of a default, Washington Mutual could invoke, as "permitted by Applicable Law," certain remedies, including acceleration of the principal balance and foreclosure on the property. In addition, Washington Mutual would be "entitled to collect all expenses incurred in pursuing the remedies . . . including, but not limited to, reasonable attorneys' fees." Bernard Decl., Ex. B, § 22. The Mortgage defined "Applicable Law" as:

> [A]ll controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

*Id.* at p. 2.

In 2008, J.P. Morgan purchased Washington Mutual's banking operations and in due course became Plaintiff's noteholder and mortgagee. Compl. ¶¶ 10, 28. Plaintiff defaulted on the Note in April 2009, and on August 21, 2009, J.P. Morgan accelerated the terms of the Note and commenced a foreclosure action on the Connecticut property. *Id.* ¶¶ 29, 31. J.P. Morgan was represented in the foreclosure action by the law firm Bendett & McHugh, P.C. *Id.* ¶ 32. In February 2012, a judgment of strict foreclosure was entered. Plaintiff "incurred charges identified in the foreclosure action as attorney fees in the amount of $3,025." *Id.* ¶ 33. In connection with the foreclosure, J.P. Morgan submitted a "sworn statement by an attorney

attesting that the attorneys' fees imposed on Plaintiff were based on legal services rendered by [Bendett & McHugh]." *Id.*

## II.    J.P. Morgan's Default and Foreclosure Practices

J.P. Morgan's agent, Fidelity National Information Services, Inc. ("Fidelity"), engaged law firms across the country to represent J.P. Morgan in foreclosure and default-related proceedings. *Id.* ¶ 37, 47.  Pursuant to service agreements between Fidelity and J.P. Morgan, Fidelity "served as the intermediary" between J.P. Morgan and the "attorneys in Fidelity's network," and "overs[aw] the performance" of those attorneys. *Id.* ¶¶ 40, 42.  When J.P. Morgan referred a foreclosure matter to Fidelity, Fidelity in turn referred the matter to an attorney in its network. *Id.* ¶ 38.

The attorneys entered into "retainer agreements" with Fidelity.  The agreements provided that the attorneys would bill J.P. Morgan for their services, and listed the fees that the attorneys could charge. *Id.* ¶ 47.  The agreements also provided that the attorneys would pay Fidelity an "administrative fee," and listed the fee amounts. *Id.*

Plaintiff alleges that, pursuant to these agreements, Fidelity, a non-law firm, received compensation "primarily from the attorneys' fees charged to borrowers." *Id.* ¶ 41-42.  She further alleges that J.P. Morgan was aware of the amounts that the law firms paid Fidelity, because J.P. Morgan's service agreements with Fidelity "typically provided a list of the fees Fidelity would charge for its services in foreclosures in various states." *Id.* ¶ 45.  According to Plaintiff, when J.P. Morgan sought reimbursement from her for "attorneys' fees" incurred in the foreclosure proceedings, it did not disclose that a portion of the fees "were payable to a non-lawyer entity." *Id.* ¶ 49.

3

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has provided "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Courts do not "assay the weight of the evidence" at the motion to dismiss stage, but instead "assess the legal feasibility of the complaint." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (citations omitted).

In determining whether to dismiss a complaint, the court may consider both the complaint itself and "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint, and that document is thus integral to the complaint," a court may "consider its contents even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (citation omitted).

## ANALYSIS

### I.     Breach of Contract

Plaintiff claims that J.P. Morgan breached the terms of the Note because the attorneys' fees she paid were "prohibited under applicable law." Opp. Mtn. 16-17; *see* Bernard Decl., Ex. A, at § 7(E). She argues that, since a portion of the $3,025 she paid in "attorneys' fees" was

4

"payable to [Fidelity,] a non-lawyer entity," the fees were prohibited by the Connecticut Rules of Professional Conduct (the "Professional Rules").[1]   Compl. ¶ 49.   J.P. Morgan argues that the Professional Rules do not constitute "applicable law" as defined by the Mortgage, and in any case, the payment of fees to Fidelity did not violate the Professional Rules.[2]

### a.   Definition of Applicable Law

Professional Rule 5.4(a) provides that a "law firm shall not share legal fees with a nonlawyer."[3]   J.P. Morgan correctly notes that under Connecticut Law, violations of the Professional Rules do not give rise to independent causes of action for civil liability.   *See Biller Assocs. v. Peterken*, 269 Conn. 716, 722-23 (2004).   Yet Plaintiff does not seek to enforce the Professional Rules through a private cause of action; instead, she argues that the Professional Rules are incorporated into the Mortgage's definition of "applicable law."   *See* Bernard Decl., Ex. B, p. 2 (defining "applicable law" as, *inter alia*, "controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law)").

Connecticut law supports Plaintiff's position that although the Professional Rules do not give rise to civil liability, they may still constitute "law."   The Connecticut Supreme Court has held that the Professional Rules are "legally binding" and "have the force of law," even though

---

[1] The Mortgage is governed by Connecticut law because the subject property is located in Connecticut.   *See* Compl. ¶ 27; Bernard Decl., Ex. B § 16.

[2] J.P. Morgan also argues that Plaintiff lacks standing because she fails to allege "that she actually paid any of J.P. Morgan's 'costs and expenses' under the Note, including the challenged Fidelity fees."   Mtn., at 11.   The Complaint specifically alleges, however, that "[t]he fees and charges under the Uniform Note were paid by [P]laintiff . . . directly to or on behalf of J.P. Morgan."   Compl. ¶ 61.   The Complaint also alleges that Plaintiff "incurred charges identified in the foreclosure action as attorney fees."   *Id.* ¶ 33.   These allegations are sufficient to establish Plaintiff's standing.

[3] Rule 5.4(a) contains some exceptions, none of which are relevant here.

they do not "give rise to a third party cause of action." *Mozzochi v. Beck*, 204 Conn. 490, 501 n.7 (1987); *see Noble v. Marshall*, 23 Conn. App. 227, 231 (1990). Connecticut courts have also declined to enforce contracts that violate the Professional Rules. *See Zeldes, Needle & Cooper v. Schrader*, 1997 Conn. Super LEXIS 2730, at *22 (Conn. Super. Ct. Oct. 10, 1997).

On the other hand, other sources indicate that the Professional Rules are not considered "law." The Preamble to the Professional Rules states that an attorney's violation of a Rule does not "create any presumption that a legal duty has been breached." Scope, Conn. Rules of Prof. Conduct. Furthermore, although the judges of Connecticut's Superior Court have adopted the Professional Rules, the Connecticut State Legislature has not. *See Cozen O'Connor, PC v. Norman*, 2011 U.S. Dist. LEXIS 5672, at *13 (D. Conn. 2011).

Considering the terms of the Mortgage in the context of these conflicting interpretations, the Court is unable to determine as a matter of law that the definition of "applicable law" does not include the Professional Rules. *See Empower Health LLC v. Prov. Health Solutions LLC*, 2011 U.S. Dist. LEXIS 60142, at *13 (D. Conn. June 3, 2011).

### b. Fee-Splitting Allegations

J.P. Morgan also argues that the payments to Fidelity are consistent with the terms of the Note and Mortgage, and do not violate Professional Rule 5.4(a). The Note expressly permits J.P. Morgan to recover "costs and expenses," including Fidelity's fees, and since J.P. Morgan is entitled to collect those fees, it is immaterial that a portion of the "attorneys' fees" were subsequently distributed to Fidelity.

That may or may not be so, but the Complaint alleges that J.P. Morgan represented Fidelity's fees to Plaintiff not as costs or expenses, but as "attorneys' fees," in violation of the

Professional Rules.[4]  Compl. ¶ 33.

J.P. Morgan relies on *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003), but that case is not dispositive.  The *Miller* Court held that an attorney did not violate the Fair Debt Collection Practices Act "by attempting to collect a facially reasonable fee—consistent with the terms of the underlying agreement—with the intent later to use the money in some otherwise prohibited manner."  *Id.* at 308.  Here, Plaintiff asserts that J.P. Morgan's recovery of the attorneys' fees was *not* consistent with the terms of the Note, because the inclusion of Fidelity's fees in the $3,025 charge for "attorneys' fees" violated "applicable law."  Furthermore, the Complaint alleges more than a mere "intent later to use the money in [a] prohibited manner": in connection with the foreclosure action, J.P. Morgan "submitted a sworn statement by an attorney attesting that the attorneys' fees . . . were based on legal services rendered by the law firm."  Compl. ¶ 33.  J.P. Morgan therefore affirmatively represented that the $3,025 represented attorneys' fees, not other "costs and expenses."

J.P. Morgan also argues that the payment of fees to Fidelity does not constitute "fee-splitting" because Fidelity received a predetermined flat fee, rather than a percentage of the attorneys' profits.  This may be a distinction, without a difference, but at this stage the Court cannot determine whether such payments are "fee-splitting."  The parties have not provided the Court with the relevant agreements.[5]

Accordingly, J.P. Morgan's motion to dismiss the breach of contract claim is DENIED.

---

[4] The parties dispute whether, even if Fidelity's fees were not identified as "attorneys' fees," they would be recoverable "costs and expenses" under the Note.  A determination on this issue is unnecessary at this stage.

[5] The parties have provided the Court a "representative agreement" between Fidelity and the law firm Mann & Stevens, but have not provided either the "service agreement" between Fidelity and J.P. Morgan or the "retainer agreement" between Fidelity and Bendett & McHugh, both of which were referenced in the Complaint.  Compl. ¶¶ 40, 47.

## II.    Non-Contractual Claims

Plaintiff asserts that Connecticut law applies to her non-contractual claims.  Under New York law, however, contractual choice of law provisions apply to non-contractual claims only if they are drafted broadly.  Such broadly-drafted provisions generally state that they "apply to controversies 'arising out of' or 'relating to' the contract."  *See Charron v. Sallyport Global Holdings, Inc.*, 2014 U.S. Dist. LEXIS 177334, at *55 (S.D.N.Y. Dec. 24, 2014); *Gross Found., Inc. v. Goldner*, 2012 U.S. Dist. LEXIS 171861, at *33 (E.D.N.Y. Dec. 4, 2012).

The choice of law provision in the Mortgage states:

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

Bernard Decl., Ex. B § 16.  This provision does not encompass non-contractual claims; Plaintiff's unjust enrichment, abuse of process, and accounting claims are therefore outside its scope.  Accordingly, in the absence of a conflict between New York and Connecticut law, New York law will apply to Plaintiff's non-contractual claims.  *See IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  If a conflict exists, a choice of law analysis is necessary.  *Id.*

### a.  Unjust Enrichment

Plaintiff asserts that J.P. Morgan was unjustly enriched when it collected the allegedly unlawful attorneys' fees.  Yet under both New York and Connecticut law, an unjust enrichment claim is generally unavailable "in the face of a valid and enforceable written agreement." *Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004); *Rosick v. Equip. Maint. & Serv. Inc.*, 33 Conn. App. 25, 37 (1993).

Plaintiff does not allege that the Note and Mortgage are unenforceable, but rather that J.P. Morgan breached the parties' otherwise enforceable contract.  She attempts to buttress her claim

by asserting that J.P. Morgan's refusal to disclose the identities of the John Doe Defendants

raises "issues outside the 'four corners of the parties' agreement,'" and that J.P. Morgan's

"numerous challenges to the scope of the Note" provide "ground[s] for maintaining" her unjust

enrichment claim. Opp. Mtn., at 21. These arguments are rejected. The identity of the John Doe

Defendants, whom the Complaint alleges are "the owners and holders of title to residential

mortgage loans that were assigned or transferred to J.P. Morgan . . . for mortgage servicing" is

unrelated to whether J.P. Morgan was unjustly enriched by the "attorneys' fees" it collected from

Plaintiff. Compl. ¶ 17. Moreover, contrary to Plaintiff's contention, neither J.P. Morgan nor

Plaintiff have challenged "the scope of the Note."

### b. Abuse of Process

The statute of limitations for abuse of process is one year in New York law and three

years in Connecticut. *See Korova Milk Bar of White Plains, Inc. v. Pre Properties, LLC*, 2013

U.S. Dist LEXIS 14937, at *49 (S.D.N.Y. Feb. 4, 2013); *Timbers v. Updike, Kelly & Spellacy,

P.C.*, 83 Conn. App. 442, 446 (2004). New York's borrowing statute provides that "when a

nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must

apply the shorter limitations period . . . of either (1) New York; or (2) the state where the cause

of action accrued." *Stuart v. Am. Cynamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998); *see* N.Y.

C.P.L.R. §202.

The New York statute of limitations therefore applies, and bars Plaintiff's claim.

Plaintiff, who was apparently a resident of Connecticut at the time her cause of action accrued,

"incurred charges identified in the foreclosure action as attorney fees" in February 2012. Compl.

¶ 33. The Complaint, however, was not filed until February 2014.[6]

---

[6] The Complaint does not specifically allege that Plaintiff was a resident of Connecticut at the time her cause of action accrued. Yet even if Plaintiff were a New York resident at the time, New York's one-year statute of

### c. Accounting

The parties disagree regarding whether New York or Connecticut law applies to Plaintiff's accounting claim. "[T]o sustain an equitable action for accounting under New York law, a plaintiff must show either a fiduciary duty or confidential relationship with the defendant." *Leveraged Leasing Admin. Corp. v. Pacificorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996). Connecticut law, on the other hand, requires "one of several conditions" to exist. *Censor v. ASC Techs. of Conn., LLC*, 900 F. Supp. 2d 181, 216 (D. Conn. 2012). "There must be a fiduciary relationship, or the existence of a mutual and/or complicated accounts, or a need of discovery, or some other special ground of equitable jurisdiction such as fraud." *Id.* A conflict therefore exists between New York and Connecticut law. *See IBM*, 363 F.3d at 144.

Since an accounting is equitable, the law of the jurisdiction with the "greater interest in having its law applied in the litigation" governs. *Burns v. Del. Charter Guar. & Trust Co.*, 805 F. Supp. 2d 12, 27 n.4 (S.D.N.Y. 2011); *Padula v. Lilarn Prop. Corp.*, 84 N.Y.2d 519, 521 (1994). Here, Connecticut law has the greatest interest in the litigation because the property at issue is in Connecticut, and Plaintiff suffered her alleged damages there.

Applying Connecticut law, Plaintiff is not entitled to an accounting. Plaintiff has not alleged the existence of a fiduciary relationship, the maintenance of mutual or complicated accounts, the need for discovery, or any other special grounds that would entitle her to an accounting.

---

limitations would still apply. *See Stuart*, 158 F.3d at 627 (unless the borrowing statute applies, "New York courts generally apply New York's statute of limitations, even when the injury giving rise to the action occurred outside New York").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint for failure to state a claim is GRANTED as to the unjust enrichment, abuse of process, and accounting claims, and DENIED as to the contract claim. The parties are directed to submit a proposed civil case management plan within two weeks after the issuance of this Opinion and Order.


Dated: New York, New York          SO ORDERED
      March 19, 2015

                                          PAUL A. CROTTY
                                          United States District Judge