UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MARIANNE STIKAS, on behalf of herself
and all others similarly situated,

                *Plaintiff*,

-against-

J.P. MORGAN CHASE BANK, N.A., and
JOHN DOES 1-20,

                *Defendants.*

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-13-16

14 Civ. 1277 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Marianne Stikas sues Defendants J.P. Morgan Chase Bank, N.A. ("J.P. Morgan") and various unknown entities, alleging that they breached the terms of a mortgage note by seeking non-legal fees in a foreclosure judgment under the guise of attorneys' fees.[1] Previously, the Court granted J.P. Morgan's motion to dismiss all but Plaintiff's claim for breach of contract. 2015 WL 1262203 (S.D.N.Y. Mar. 19, 2015). The Court also held that Plaintiff adequately pleaded standing by alleging that "[t]he fees and charges under the Uniform Note were paid by [P]laintiff . . . directly to or on behalf of J.P. Morgan." *Id.* at *3 n.2 (quoting Compl. ¶ 61).

    J.P. Morgan now moves for summary judgment, arguing the undisputed proof is that Plaintiff never paid any legal fees and accordingly lacks standing. The Court agrees; and GRANTS the motion for summary judgment.

---

[1] Plaintiff alleges that the unknown John Doe Defendants "assigned or conveyed residential mortgage loans to J.P. Morgan for purposes of loan servicing" and, as such, are jointly and severally liable for J.P. Morgan's breach of the mortgage note. Compl. ¶ 62.

1

## BACKGROUND

On January 21, 2004, Washington Mutual issued Plaintiff an adjustable-rate mortgage note and loan in the amount of $277,500 for the purchase of residential property in Kent, Connecticut. Def. 56.1 Stmt., Dkt. 44 ¶¶ 1-2. In September 2008, J.P. Morgan acquired Washington Mutual and became mortgagee and servicer for the loan. *Id.* ¶ 4. In April 2009, Plaintiff defaulted on the note, and in August 2009, J.P. Morgan accelerated the note and hired Bendett & McHugh, a Connecticut law firm, to pursue a foreclosure action. *Id.* ¶¶ 6-10. On February 14, 2012, the foreclosure court entered an Order for Judgment of Strict Foreclosure, transferring title in the property to J.P. Morgan. *Id.* ¶ 18. In addition to the outstanding debt, the foreclosure judgment included $3,025 in attorneys' fees, $960 in appraisal costs, and $225 in title search costs. *Id.* ¶ 19; Decl. of James L. Bernard, Dkt. 42 Ex. L. Those fees and costs were supported by detailed expense reports prepared by Bendett & McHugh. Dkt. 42 Ex. K.

In July 2012, J.P. Morgan sold the property for $187,118.66, which it applied to the $299,192.28 outstanding principal balance on Plaintiff's loan. Def. 56.1 Stmt. ¶¶ 20-21. Plaintiff never made any payments to J.P. Morgan on the net outstanding balance, and J.P. Morgan never pursued a deficiency judgment against Plaintiff. *Id.* ¶¶ 23, 53. Instead, J.P. Morgan canceled the remaining debt and wrote off the outstanding balance. *Id.* ¶ 54.

Plaintiff disputes a small portion of the $3,025 attorneys' fee awarded in the foreclosure judgment. Specifically, Plaintiff challenges a $140 fee that Bendett & McHugh paid Fidelity National Information Services, J.P. Morgan's foreclosure processor, at the outset of the foreclosure proceedings in August 2009. Pl. 56.1 Stmt., Dkt. 48 ¶¶ 4, 13, 30. Plaintiff contends that the Fidelity fee was necessarily incorporated into the attorneys' fee award charged to her in the foreclosure judgment. *Id.* ¶ 32. Plaintiff alleges that since Fidelity performed non-legal work, J.P. Morgan violated Connecticut Rules of Professional Conduct that bar splitting legal fees with

non-lawyers and, as a result, breached the term of the note that prohibits J.P. Morgan from seeking any recovery "prohibited by Applicable Law." Pl. Opp. Mem., Dkt. 47 at 1-2. She seeks to bring a class action on behalf of herself and all other holders of similarly breached J.P. Morgan mortgage notes. Compl. ¶ 18. In response, J.P. Morgan contends that it never sought to recover the Fidelity fee through the foreclosure judgment; rather, the attorneys' fees award consists entirely of Bendett & McHugh's legal work. *See* Def. Mem., Dkt. 43 at 1-2.

On August 1, 2014, J.P. Morgan moved to dismiss. In addition to seeking dismissal of the individual claims, J.P. Morgan also argued that Plaintiff lacked standing because she failed to allege "that she actually paid any of J.P. Morgan's 'costs and expenses' under the Note, including the challenged Fidelity fees." *Stikas*, 2015 WL 1262203, at *3 n.2. On March 19, 2015, the Court granted the motion in part, holding that only a claim for breach of contract was adequately pleaded and timely. *Id.* at *6. The Court also held that Plaintiff's allegation that "[t]he fees and charges under the Uniform Note were paid by [P]laintiff . . . directly to or on behalf of J.P. Morgan" adequately pleaded standing. *Id.* at *3 n.2.

J.P. Morgan now moves for summary judgment, again arguing that Plaintiff lacks standing.

## **DISCUSSION**

### I. Applicable Law

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). Summary judgment is warranted where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015).

Article III of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." The standing doctrine, which sets apart those "Cases" and "Controversies" that are justiciable, has three necessary elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the party asserting jurisdiction must have suffered an injury-in-fact, defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 449 (2d Cir. 2014) (quoting *Lujan*, 504 U.S. at 560). Second, "there must be a causal connection between the injury and the conduct" of which the party asserting jurisdiction complains. *Id.* at 449-50. And third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 450.

"[S]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Stepniak v. United Materials, LLC*, 305 Fed. Appx. 789, 790 (2d Cir. 2009). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice to allege standing." *Id.* Summary judgment is different; "mere allegations" are insufficient. *Lujan*, 504 U.S. at 561. Rather, "[t]o defend against summary judgment for lack of standing, a plaintiff 'must set forth by affidavit or other evidence specific facts' supporting standing, as is generally required under Rule 56." *Nat'l Res. Def. Council, Inc. v. FDA*, 710 F.3d 71, 79 (2d Cir. 2013) (quoting *Lujan*, 504 U.S. at 561). If the Court determines at any time that it lacks jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(h)(3).

## II. Analysis

It is now clear that Plaintiff's basis for standing as alleged in the Complaint—that she paid the "fees and charges under the Uniform Note"—is completely inaccurate. In fact, Plaintiff has not made any payments at all on the foreclosure judgment. While her unsupported allegation was sufficient to survive a motion to dismiss, it is not sufficient on summary judgment, where

4

Plaintiff—as the party asserting jurisdiction—bears the burden of proof. *Nat'l Res. Def. Council*, 710 F.3d at 79.

To salvage her claim, Plaintiff now argues two alternate theories of standing. As an initial matter, dismissal is warranted because Plaintiff disavows the sole ground for standing alleged in the complaint. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("[Plaintiff] may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment."). Further, Plaintiff's two new theories of standing are meritless.

*First*, Plaintiff argues that she has standing because J.P. Morgan's breach of the note in and of itself is a cognizable injury-in-fact, even though she had no resulting financial loss. That may be correct as a matter of law. *See Fleisher v. Phoenix Life Ins. Co.*, No. 11 cv 8405 (CM), 2013 U.S. Dist. LEXIS 99959, at *23 (S.D.N.Y. July 12, 2013) ("Invading a legally protected interest by breaching the terms of a contract is an injury-in-fact for purposes of standing."). But that theory, which in effect merges standing with the merits, fails here because Plaintiff has not adduced evidence that J.P. Morgan *in fact* breached the note. The record contains detailed invoices documenting the items that composed the $3,025 in attorneys' fees that Bendett & McHugh charged J.P. Morgan and which J.P. Morgan subsequently sought in the foreclosure judgment. Dkt. 42 Ex. K, L. Those invoices do not include the Fidelity fee that allegedly breached the note.

In response, Plaintiff speculates that "the illegal referral fee paid to Fidelity was necessarily included in the amounts for attorneys' fees charged to Stikas in foreclosure proceedings." Pl. Opp. Mem. at 2. But her only purported support for that claim is a declaration submitted by Bruce A. Green, a Professor who teaches legal ethics at Fordham University School of Law. Dkt. 49 Ex. K. At best, the Green Declaration only urges that *if* the foreclosure judgment included the Fidelity fee, then J.P. Morgan would have violated several Connecticut Rules of Professional Conduct. *See id.* ¶

2 (explaining that Professor Green is only qualified "to provide expert opinions on questions of lawyers' professional conduct"). It provides no independent evidence that the foreclosure judgment *in fact* included the Fidelity fee. As such, there is no genuine dispute of material fact as to whether J.P. Morgan breached the note and, accordingly, Plaintiff has not met her burden to establish standing on this ground.

*Second*, Plaintiff asserts that she has standing based on J.P. Morgan's outstanding foreclosure judgment against her. Even if that is a cognizable injury-in-fact, it fails the causation test. *Lujan*, 504 U.S. at 560. The conduct complained of (the Fidelity fee) did not cause the injury (the foreclosure judgment). If anything the opposite is true: the necessity of foreclosure led J.P. Morgan to accrue and later seek reimbursement for resulting fees, including (allegedly) the Fidelity fee. Standing premised on the foreclosure judgment fails as a matter of law. *Id.*

Since the Court lacks jurisdiction, the action is dismissed. Fed. R. Civ. P. 12(h)(3).

## CONCLUSION

The Court GRANTS Defendant's motion for summary judgment and dismisses the action for lack of jurisdiction. The Clerk is directed to enter judgment and terminate 14 cv 1277.

Dated: New York, New York
     May 13, 2016

SO ORDERED

PAUL A. CROTTY
United States District Judge